UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SANTOS ACEVEDO GUTIERREZ,<br><br>Defendant. | No. 1:14-cr-00105-NONE-SKO<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. No. 29) |

Pending before the court is defendant Santos Acevedo Gutierrez's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is largely based on defendant's medical condition and the risks allegedly posed to him by the ongoing coronavirus ("COVID-19") outbreak. (Doc. No. 29.) For the reasons explained below, defendant's motion is denied.

**BACKGROUND**

On May 22, 2014, defendant was charged by way of indictment with one count of possession with the intent to distribute at least 50 grams or more of actual methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Doc. No. 1.) On January 21, 2015, defendant entered into a plea agreement with the government whereby he agreed to plead guilty

1

1   to the count charged in the indictment.  (Doc. No. 17.)  According to the presentence report
2   prepared in connection with his sentencing, defendant sold methamphetamine to a confidential
3   informant, and approximately four pounds of methamphetamine were subsequently seized from
4   defendant's home.  (Doc. No. 23 at 4.)  Per the U.S. Sentencing Guidelines, defendant's total
5   offense level was determined  to be 34 and his criminal history placed him in category VI,
6   resulting in an advisory sentencing guideline range calling for a term of imprisonment of between
7   262 and 327 months.  (*Id.* at 18.)  The U.S. Probation Office recommended a sentence of 210
8   months based upon consideration of the factors in 18 U.S.C. § 3553(a).  (*Id.*)  On May 21, 2015,
9   the court sentenced defendant to 210 months in prison with a 60-month term of supervised release
10  to follow along with the mandatory $100 penalty assessment.  (Doc. No. 28.)

11       Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP")
12  Victorville Medium I FCI.  *Find an inmate*, FEDERAL BUREAU OF PRISONS,
13  https://www.bop.gov/inmateloc/ (last visited September 22, 2021.)  On March 12, 2021,
14  defendant filed the pending motion for compassionate release pursuant to 18 U.S.C.
15  § 3582(c)(1)(A).  (Doc. No. 29.)  On June 24, 2021, the government filed its opposition to the
16  motion.  (Doc. No. 45.)  Defendant did not file a reply brief.

17                                  **LEGAL STANDARD**

18       A court generally "may not modify a term of imprisonment once it has been imposed."  18
19  U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of
20  conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not
21  be modified by a district court except in limited circumstances.").  Those limited circumstances
22  include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp.
23  3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"),
24  motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A)
25  (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for
26  compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).  In this regard, the
27  FSA specifically provides that a court may
28  /////

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)  extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of*

The policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit recently held "that the current version of U.S.S.G. §1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and

---

*Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement §1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ("In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" (citation omitted)); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

# ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 973–74; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.     Administrative Exhaustion**

Defendant reports that he did not submit an administrative request before filing his *pro se* motion for compassionate release because his case manager told him that he was picked by the warden to be released on home confinement. (Doc. No. 29 at 3.) In his supplemental brief, defendant explains that his counsel mailed an administrative request to the warden at Victorville FCI via FedEx Priority Overnight on May 4, 2021. (Doc. Nos. 44 at 8.) The government represents that the request is still pending and concedes that defendant has exhausted his administrative remedies. (Doc. No. 45 at 3.) Because a failure to exhaust administrative remedies where such is required is normally viewed as an affirmative defense, the government's concession on this point is dispositive. Therefore, the court will address the merits of defendant's motion.

**B.     Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or

6

"other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[4] In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, 445 F. Supp. 3d 22, 24 n.1 (N.D. Cal. 2020).

Here, defendant argues that extraordinary and compelling reasons warranting his compassionate release exist due to his weight, diabetes, and heart condition. To qualify for compassionate release, defendant must demonstrate that he is suffering from some "serious" medical condition "that substantially diminishes [his] ability . . . to provide self-care" in Victorville Medium I FCI and the medical condition is one "from which he . . . is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Defendant has been diagnosed with hypertension and receives medication for such condition. (Doc. No. 44-1 at 1, 30, 37 (sealed).) Defendant notes that he has not recently seen a cardiologist. (Doc. No. 44 at 5.) Additionally, according to the presentence report, plaintiff is 5'10" and weighed 196 pounds. (Doc. No. 23 at 2.) At that time, defendant's body-mass index ("BMI") was 28.1, indicating he was overweight. *Adult BMI Calculator*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited September 27, 2021). As of June 11, 2020, defendant's weight had increased to 235 pounds and his BMI was 33.7, which is considered obese. (Doc. No. 44-1 at 31 (sealed)); CENTERS FOR DISEASE CONTROL AND PREVENTION, *supra*. Defendant's diabetes is also documented in his BOP records. (Doc. No. 44-1 at 29.)

/////

---

[4] Because defendant is has just turned 49 (Doc. No. 23 at 2), these age and age-related factors are irrelevant to the court's disposition of the pending motion.

Defendant's obesity, hypertension and diabetes may place him at a greater risk of suffering a severe illness if he were to contract COVID-19 again. *See generally People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited September 27, 2021). The government concedes so much but argues that extraordinary and compelling reasons do not exist because defendant is now fully vaccinated. (Doc. No. 45 at 6–7.) The government further argues that despite defendant's statement that he has not seen a cardiologist within one year, defendant received an echocardiogram on April 8, 2021. (Doc. No. 45 at 6 (citing Doc. No. 44-1 at 98–99).)

Notably, defendant received his first dose of the Moderna vaccine on January 7, 2021 and his second dose on February 2, 2021. (Doc. No. 44-1 at 73.) Because more than two weeks have passed since receiving his second dose, defendant is now fully vaccinated against the virus. *See COVID-19: When You've Been Fully Vaccinated*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated.html (last visited September 27, 2021). At this point, the medical evidence strongly suggests that fully vaccinated individuals, like defendant Gutierrez, are reasonably well-protected against becoming severely ill or dying from COVID-19.[5] *See United States v. Ochoa-Alapisco*, No. 14-cr-378-ADM-LIB, 2021 WL 2322680, at *3 (D. Minn. June 7, 2021) (denying compassionate release because "any risk...has been substantially reduced because [defendant] is likely now fully vaccinated" which "provides him with significant protection against severe illness or death from COVID-19 should he become reinfected"); *United States v. Willis*, 3:15-cr-00465-BR, 2021 WL 2179256, *3-4 (D. Ore. May 27, 2021) (concluding that federal prisoners who have been fully vaccinated but suffer from chronic medical conditions that would put them at serious risk of severe illness from COVID-19 do not satisfy the extraordinary and compelling standard for

---

[5] Based upon news reports, it also appears rare for a vaccinated individual to both contract the virus and to suffer a severe illness as a result. *See* Tucker Reals, *Study Finds Low Rate of COVID-19 "Breakthrough" Infections, Fewer Symptoms in Vaccinated People*, September 2, 2021, https://www.cbsnews.com/news/covid-breakthrough-infections-vaccine-rate-symptoms-study/ (last visited September 27, 2021).

compassionate release) (citing cases); *United States v. Smith*, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Barajas-Guerrero*, No. 1:17-cr-00148-NONE, 2021 WL 1839728, at *6 (E.D. Cal. May 7, 2021); *United States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (finding no extraordinary and compelling reasons for compassionate release where defendant has been fully vaccinated); *United States v. Grummer*, 519 F. Supp. 3d 760, 763 (S.D. Cal. 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19.  Other courts to address the issue have reached similar conclusions."); *United States v. Ballenger*, No. 16-cr-5535 BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release.").[6]

Based on the medical evidence before the court, defendant is not "suffering from a serious physical . . . condition" for purposes of compassionate release.  *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).  Therefore, his motion will be denied on this basis.

**C.     Consistency With the § 3553(a) Factors**

Because the pending motion fails to establish extraordinary and compelling reasons justifying compassionate release, the court need not address whether any reduction in defendant's sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).  Nonetheless, the undersigned notes that the presentence report in defendant's case

---

[6] Moreover, as of October 30, 2021, it appears that the Bureau of Prisons is reporting that no prisoners and eleven staff members are currently suffering from active infections with the virus causing COVID-19 at Victorville Medium I FCI. See COVID-19, FEDERAL BUREAU OF PRISONS, https://www.bop.gov /coronavirus/ (last visited October 30, 2021).  While the undersigned does not necessarily accept these reported numbers at face value in light of current CDC guidelines with respect to both testing and the manner of counting "active cases," there is also no evidence before the court challenging those reported numbers in this case.

recommended a downward variance from the advisory guideline range to a sentence of 210 months in this case due to defendant's health issues, a willingness to participate in substance-abuse treatment, and his desire to further his education. The court in fact sentenced defendant to 210 months' confinement, of which defendant has served only approximately 98 months, including good-time credits. Defendant did not argue that he had engaged in substance-abuse treatment or continued his education in prison, and the court did not locate any records of having completed such programs in the pending motion.

Considering all these factors, the court concludes that no further reduction of sentence is warranted in this case, as the granting of defendant's motion would not adequately reflect the seriousness of defendant's offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a); *see also United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *5–6 (N.D. Cal. May 26, 2020) ("The length of the sentence remaining is an additional factor to consider in any compassionate release analysis, with a longer remaining sentence weighing against granting any such motion." (citation omitted)).

## CONCLUSION

For the reasons explained above, the court concludes that defendant has not demonstrated that "extraordinary and compelling reasons" exist warranting his compassionate release from prison. Moreover, the court finds that the granting of release at this time would not be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). Accordingly, defendant's motion for compassionate release (Doc. No. 29) is denied.

IT IS SO ORDERED.

Dated:   **October 30, 2021**                                   /s/ Dale A. Drozd
                                                                UNITED STATES DISTRICT JUDGE